**Earl Steve HAYES, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

**Vicki Lynn GRAHAM, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

May 29, 1987.

Discretionary Review Denied by Supreme Court July 30, 1987.

As Modified on Rehearing Aug. 14, 1987.

Timothy T. Riddell, Asst. Public Advocate, Frankfort, for Hayes.

Linda K. West, Asst. Public Advocate, Frankfort, for Graham.

David L. Armstrong, Atty. Gen., Valerie L. Salven, Asst. Atty. Gen., Frankfort, for appellee.

Before COOPER, HAYES and WEST, JJ.

COOPER, Judge.

These are related appeals from a judgment convicting the appellant, Earl Steve Hayes, of theft by unlawful taking of property valued over $100, and of being a persistent felony offender in the second degree, and also convicting the appellant, Vicki Lynn Graham (hereinafter Graham), of theft by unlawful taking of property valued over $100. The appellant was sentenced to six years' imprisonment, and Graham to two years' imprisonment. On appeal, the principal issue is whether the trial court erred in: (1) allowing the Commonwealth to introduce into evidence an "unsanitized" statement of Graham during the trial of the appellant; and (2) allowing Graham to be represented by counsel who was in the same law firm as counsel representing the appellant. Reviewing the record below, we reverse and remand on the first issue, and affirm on the second.

The facts relative to this action are as follows: In October of 1985, the appellant and Graham were jointly indicted for theft by unlawful taking of property valued over $100. KRS 514.030 (Class D Felony). Additionally, the appellant was indicted for being a persistent felony offender in the first degree. KRS 532.080. Such indictments arose out of a series of events occurring on August 14, 1985 in Jefferson County.

According to the testimony introduced during the joint trial, the following sequence of events occurred. On Wednesday, August 14, at approximately noon, the

appellant picked up Carl Atcher and went to the Clean Up Shop to work on an automobile owned by the appellant. Together with Paul Gillisby, they worked on appellant's vehicle until 5:30 in the afternoon. At this time, Graham arrived at the Clean Up Shop to give the appellant a ride. Subsequent to her arrival, she indicated to Carl Atcher that she needed to borrow some money, and she was willing to sell him some clothes if he were willing to buy them. Specifically, she indicated to Atcher that she had many pairs of new blue jeans in the trunk of her car. Atcher refused the sale.

Subsequently thereafter, both appellant and Graham departed in the latter's vehicle and arrived at Oxmoor Center. There, they were observed by two store detectives at Shillito-Rikes Department Store both entering the store and leaving it. Specifically, they were observed going to Graham's vehicle at which time she took something out of her purse and put it in the trunk of her car. They were then observed returning to Shillito-Rikes. Once in the store, they purportedly went to the "University Shop" section of the store where the appellant picked up two pairs of Levi's, rolled them up, and handed them to Graham who then stuffed them into her purse. They then exited the store and went back to Graham's vehicle. As soon as Graham opened the trunk of her vehicle, both she and the appellant were arrested.

During the trial, the arresting officers testified that upon looking into the trunk of Graham's vehicle, they saw numerous pairs of jeans with Shillito-Rikes tags on them. They further testified that upon questioning the appellant, he responded that he was out of work and needed the money. Significantly, one of the arresting officers, J.B. Watts, testified that Graham admitted she and the appellant had taken the jeans in order to resell them to other people. Graham also informed Watts that the Shillito-Rikes jeans which were found in the trunk of her car had come from that specific Shillito-Rikes Store. A notebook, containing a list of the merchandise and the specific sizes of the merchandise was found in Graham's purse.

Subsequent to an indictment being issued against them—that count of the indictment charging the appellant with being a persistent felony offender in the first degree was reduced to being a persistent felony offender in the second degree—the appellant and Graham were tried jointly. Prior to the time of trial, the appellant's counsel moved the Court to "sanitize" the statement taken from Graham which specifically implicated the appellant not only in the theft of the two pairs of jeans found in her purse, but also in the theft of other pairs of jeans found in the trunk of her automobile, as well as the total scheme relating to stealing clothes and reselling them. The trial court summarily overruled this motion. Although the appellant admitted during his own testimony that he had assisted Graham in taking the two pairs of jeans in question, he denied any other involvement in any other criminal activity.

Subsequent to the presentation of all the evidence, the jury was instructed on both the felony and misdemeanor crime of theft by unlawful taking. The jury subsequently entered a verdict finding the appellant guilty of theft by unlawful taking of property valued over $100 and assessed his punishment at two years' imprisonment. As a result of a conviction for being a persistent felony offender in the second degree, his sentence was enhanced to six years. Graham was convicted of theft by unlawful taking over $100 and sentenced to two years' imprisonment. It is from such judgments that both appellant and Graham now appeal.

■ On appeal, the appellant raises a single issue. He argues that he was denied his federal and state constitutional right to confront a critical witness as a result of the trial court's refusal to "sanitize" his co-defendant's out-of-court statement. Specifically, he argues that as his defense was one of limited involvement extending only to the theft of the two pairs of jeans from the "University Shop" at the Shillito-Rikes Department Store, the introduction of this out-of-court statement implicating him in a general overall criminal

scheme resulted in a denial of his constitutional rights. Reviewing the record below, we agree.

In a pretrial motion requesting the trial court to "sanitize" Graham's out-of-court statement, the appellant requested that any references in such statement to "they" be changed to "I". His argument was premised on the belief that a failure to do so would result in a violation of the mandate of the Court set forth in *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). The *Bruton* Court, in delineating the scope of a defendant's right to confrontation secured by the Sixth Amendment to the United States Constitution, held that such a right is violated if a defendant, in a joint trial with a co-defendant, is inculpated by the confession of a nontestifying co-defendant. Furthermore, that Court held that such a right of confrontation is violated even if the trial court specifically instructs the jury to disregard inadmissible evidence which incriminates the defendant:

> [T]here are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored.... Such a context is presented here, where the powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial. Not only are the incriminations devastating to the defendant but their credibility is inevitably suspect, a fact recognized when accomplices do take the stand and the jury is instructed to weigh their testimony carefully given the recognized motivation to shift blame onto others. The unreliability of such evidence is intolerably compounded when the alleged accomplice, as here, does not testify and cannot be tested by cross-examination. It was against such threats to a fair trial that the Confrontation Clause was directed.

*Bruton*, 88 S.Ct. at 1627–28, *quoted in Parker v. Randolph*, 442 U.S. 62, 99 S.Ct. 2132, 2137–38, 60 L.Ed.2d 713 (1979).

Following *Bruton, supra*, the Court in *Lee v. Illinois*, —— U.S. ——, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986), ruled that an out-of-court statement by a co-defendant is presumed to be unreliable on the question of a defendant's conduct or culpability and must be excluded unless it is thoroughly substantiated by a defendant's own statement or confession:

> The true danger inherent in this type of hearsay is, in fact, its selective reliability. As we have consistently recognized, a codefendant's confession is presumptively unreliable as to the passages detailing the defendant's conduct or culpability because those passages may well be the product of the codefendant's desire to shift or spread blame, curry favor, avenge himself, or divert attention to another. If those portions of the codefendant's purportedly "interlocking" statement which bear to any significant degree on the defendant's participation in the crime are not thoroughly substantiated by the defendant's own confession, the admission of the statement poses too serious a threat to the accuracy of the verdict to be countenanced by the Sixth Amendment. In other words, when the discrepancies between the statements are not insignificant, the codefendant's confession may not be admitted.

*Lee*, 106 S.Ct. at 2064–65. And, the *Lee* Court stressed that if the confessions of a defendant and co-defendant do not "interlock" on significant and relevant questions of fact, the confession of the co-defendant is not admissible.

Here, the statements by the appellant and Graham differed markedly on the question of whether the appellant was involved in more than simply stealing two pairs of jeans. Although the appellant admitted to being guilty of the misdemeanor of stealing the jeans, he steadfastly denied any other involvement in a scheme to steal clothing for resale. Consequently, Graham's statement that she *and* the appellant were involved in such a scheme was clearly prejudicial and clearly inadmissible.

Unlike the situation in *Butler v. Commonwealth*, Ky., 516 S.W.2d 326 (1974), the statement of Graham implicating the appellant in the overall scheme was not simply cumulative evidence. Significantly, there was no other evidence implicating the appellant in such a scheme. In point of fact, there was testimony that at the time Graham met the appellant on the afternoon of August 14, 1985, the trunk of her vehicle was already full of many pairs of new jeans. Arguably, both could have been involved in stealing the jeans either the day or evening before. Nevertheless, there was no evidence introduced during the trial to support such a theory. Although the Commonwealth argues that the statements made by the appellant both at the time of his arrest and subsequent to it *could* be construed as an admission of his involvement in an overall criminal scheme, we find such an argument to be without a factual foundation.

Specifically, the appellant's statement that he was shoplifting "because he was out of work and needed the money" is nothing more than an admission that he stole the two pairs of jeans in question. The jury cannot be permitted to speculate that such a statement constituted an admission of involvement in an overall criminal scheme. Furthermore, the appellant's statement that "this was the only way he could get some quick money was to shoplift and selling it," cannot be construed to constitute an admission to anything more than shoplifting on the day in question. And, although the Commonwealth argues that the appellant lied in his out-of-court statement with respect to his prior criminal record, such a question goes to his credibility and not to whether he was involved in other criminal activity.

Simply put, the jury, as a result of the introduction into evidence of Graham's statement, was allowed to make the inference that both Graham and the appellant were involved in the repeated removal of merchandise from Shillito-Rikes stores and the sale of such merchandise to third parties. Consequently, the trial court committed reversible error in admitting into evidence the unsanitized out-of-court statement of Graham. As such, the appellant's conviction for the felony in question must be reversed. This action is remanded to the trial court for a new trial in accordance with the views expressed herein. *See Lee, supra; Hobbs v. Commonwealth*, Ky., 655 S.W.2d 472 (1983), *cert. denied*, 465 U.S. 1067, 104 S.Ct. 1419, 79 L.Ed.2d 745 (1984).

Finally, although Graham argues that she was denied effective assistance of counsel as a result of being represented by counsel who was in the same law firm as counsel representing the appellant, we find, from a review of the record below, that such an argument is without merit. Specifically, both the appellant and Graham signed a "Waiver of Dual or Multiple Representation" form prior to the time of the trial. The trial court fully complied with RCr 8.30 by entering such waivers into the record, and by informing each defendant that a possibility existed that a conflict of interest could develop on the part of their respective counsel. Significantly, neither attorney involved objected. *See Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978). The *Holloway* Court noted that an attorney who is representing two defendants in a criminal trial was in the best position, both professionally and ethically, to determine when and if a conflict of interest existed. Here, there was no such allegation.

And, although Graham argues that her counsel failed to cross-examine the appellant as a result of the underlying conflict of interest, there was no reticence on the part of her counsel to implicate the appellant during his closing arguments. Viewing the record as a whole, it is evident that her counsel did not cross-examine the appellant for the simple reason that he did not want to elicit any more damaging testimony against his client. As such, we find no error herein, and affirm the judgment of conviction of the trial court.

All concur.